UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KIRK PATRICK SEVERIN                                    CIVIL ACTION

VERSUS                                                  NO. 15-283

ORLEANS PARISH CRIMINAL                                 SECTION "H"(2)
SHERIFF OFFICE ET AL.

### ORDER AND REASONS ON MOTION TO AMEND;
### REPORT AND RECOMMENDATION

Plaintiff, Kirk Patrick Severin, is a prisoner currently incarcerated in the Orleans Parish Prison system ("OPP"). He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Sheriff Marlin N. Gusman and Captain Russell Rhodes. Severin alleges that while incarcerated in OPP, he was subjected to various unconstitutional conditions of confinement. He seeks compensatory and punitive damages in the amount of $1.5 million. Record Doc. No. 5 (Complaint at ¶¶ IV and V and Attachments).

On April 14, 2015, I conducted a telephone conference in this matter. Participating were plaintiff pro se; and Pete Matthews, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

After the conference, Severin filed a motion to amend his complaint to expand upon his claim of unconstitutional conditions of confinement. Defendants subsequently

filed an opposition memorandum.  Record Doc. Nos. 19 and 21.  Defendants argue that the motion should be denied because plaintiff's amendment is futile because it fails to state a claim upon which relief can be granted. Plaintiff's testimony during the <u>Spears</u> hearing has been considered in connection with this motion.

## **THE RECORD**

Severin testified that he was originally arrested on December 15, 2014, and charged with possession of a stolen car, which has since been reduced to unauthorized use of a motor vehicle.  He stated that, at the time of the conference, he was a pretrial detainee and had been held in the Tent 3 facility of OPP since his arrest. Severin confirmed that he asserts four kinds of legal claims in this case, involving conditions, medical care, outdoor recreation and access to legal materials.

As to his first claim that he has been exposed to unconstitutional conditions of confinement at OPP, he testified that OPP Tent 3 is full of spores, dust, mildew, bacteria and microorganisms.  He alleged that mattresses used by the inmates are kept on the floor "where rodents and other things run all night," and "sometimes the floors are wet, sticky, and those things have residual contaminated germs on them, and . . . are never, ever cleaned."  He stated that some inmates use old mattress covers as shower curtains, which "hold all types of germs [and] mildews."

Severin stated that "they just started recently [to] come and spray bleach, but from my experiences with spores and mildew, they constantly grow and it discolors the

mildew, [which] still has rapid growth when you spray it.  I think it will put it maybe dormant, . . . [but] two showers running" all day causes the mildew to return.

Severin alleged that "little black worms" or "bugs, I call them leaches," crawl out of the shower drains.  He said that the periodic spraying of bleach is neither regular nor consistent and has only happened "once or twice" during the four months he has been in Tent 3.  He said that "some time in the morning" other cleaning efforts are also made by inmates, who "try to mop it" perhaps "three times a week."  Severin stated that he did not know exactly what the inmates use to clean the area, although "it's a soap, I'm sure," but those cleaning attempts are not enough to eradicate the residual dust, mold and mildew. He testified that during one such cleaning effort, dust fell from the overhead light fixtures onto his bed and the floor, and he picked up the dust with an old towel.  Severin said brooms and other cleaning materials are never left in the tent.  He described the inmates' cleaning efforts as mopping the shower and scrubbing the bottom of the floor, but "it's just not enough.  It keeps me sneezing, coughing; my throat is sore right now."

Severin testified that he has made numerous sick call requests and medical visits, but he believes that OPP medical staff are not prepared to treat illnesses resulting from spores, mildew and possible airborne pathogens.  He described his symptoms as "flu, cold-like symptoms, . . . I feel like I'm developing . . . COPD [chronic obstructive pulmonary disease].  It feels like it's shortening my wind."

Severin stated that he had received the medical records I ordered defendants to produce, Record Doc. Nos. 10 and 16, and that "they're accurate to a certain extent," but he did not see in those records all of the sick call requests he had submitted.  He acknowledged the accuracy of the notation in the records "where they gave me sinus medicine for three or four days or seven days, but that's not the answer."  He also confirmed the indication in the medical records that on January 8, 2015, he was seen by a doctor on an "acute care visit" for his various symptoms, at which time he was provided with Zyrtec and advised to stay hydrated by drinking water every day. He also confirmed the notation in his medical records that he takes Benadryl when he is not in jail because "some time my skin develops an itch in air-condition(ing)." He also acknowledged the accuracy of the medical record indicating that he saw Dr. Nguyen at the jail on January 13, 2015, at which time he received cerozine, an antihistamine, for about a week.  He said he had spoken about these same symptoms to several OPP medical workers who dispense medication at the jail on various occasions, but he complained that sometimes it takes 12 to15 days to see a doctor after he requests attention.

Severin opined that the medical care at the jail has been inadequate in that "they're ill-equipped to treat [conditions caused by] mildew and your respiratory system that's rejecting this stuff."  He said his throat ailments and coughing have never been as bad as he is experiencing in the jail.  Severin admitted that no doctor has ever diagnosed his

condition as COPD.  He asserted that he has filed numerous grievances about the dust and other conditions in the tent unit of the jail, but without any satisfactory response.  He described the conditions as "just ridiculous," and alleged that jail officials have admitted that they know about the dust but can do nothing about it.

Severin also testified that he has received no outdoor recreation whatsoever while incarcerated in OPP.  He said the only times he has been outdoors during his OPP incarceration were to clean the tents, so deputies could take away things the inmates are not supposed to have in their possession in jail or to do "something with a vacuum cleaner" to the air-conditioning system, although he complained that the dust returned shortly after these vacuuming efforts.  As to recreation, Severin said, "you just have to do what you have to do."  He said inmates sometimes try to exercise indoors in the tents at night, particularly in the day room, when inmate traffic subsides, but he said he never exercises in the day room himself because "it's too noisy and there's too much ignorance in that area."

As to his claim of insufficient access to legal materials, Severin complained that he is unable to obtain copies of paperwork needed for his court filings, which sometimes causes him problems with meeting court deadlines.  He admitted that legal assistance personnel at the jail respond to his requests, but he complained that it takes too long.  Asked specifically what effect these problems had on his court cases, he stated that various filings required by this court in the instant case, such as the account verification

needed to support his application to proceed as a pauper, had been delayed.   He

conceded, however, that the court permitted him additional time to make his submissions,

which he ultimately succeeded in doing.   He stated that he had experienced no problems

with any other copying of legal papers, other than in connection with the instant case in

this court.

In summary, Severin complained that he continues to experience daily problems

with coughing, sneezing, headaches and post-nasal drip caused by the dust and mold

conditions in the jail facility.

## ANALYSIS

## I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened

by the court as soon as practicable after docketing, regardless whether it has also been

filed in forma pauperis.   28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939,

942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir.

2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d

578, 579-80 (5th Cir. 1998);   Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013

WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014).

Such complaints by prisoners must be dismissed upon review if they are frivolous or fail

to state a claim upon which relief can be granted.   28 U.S.C. § 1915A(b)(1); Lewis, 589

F. App'x at 952; <u>Thompson</u>, 213 F. App'x at 942; <u>Shakur</u>, 391 F.3d at 113; <u>Carr v. Dvorin</u>, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"   <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"   <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the

actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

8

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim of violation of his constitutional rights, even under the broadest reading.[1]

---

[1] The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

II.     UNSANITARY CONDITIONS

Plaintiff's testimony confirmed his written allegations concerning unsanitary

conditions during his incarceration in OPP.  Severin was a pretrial detainee at all times

that form the basis of his claims in this case.  Regardless whether an inmate is a pretrial

detainee or a convicted prisoner, the standard of liability is the same for episodic acts or

omissions of jail officials of the type alleged in this case.  McCarty v. Zapata County,

243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing Gibbs v.

Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare v. City of Corinth, 74 F.3d 633, 636

(5th Cir. 1996)); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999).

In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the
> Eighth Amendment to provide both pretrial detainees and convicted
> inmates with basic human needs, including medical care and protection
> from harm, during their confinement; and (2) that a state jail official's
> liability for episodic acts or omissions cannot attach unless the official had
> subjective knowledge of a substantial risk of serious harm to a pretrial
> detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an

inference that the condition he described was the result of a prison official's act either

"implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an

identifiable intended condition or practice" or that the "official's acts or omissions were

sufficiently extended or pervasive, or otherwise typical of extended or pervasive

10

misconduct by other officials, to prove an intended condition or practice." Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies. Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Severin's allegations do not rise to the level of violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>."  <u>Id.</u>

at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference'
> is a <u>stringent</u> standard of fault, requiring proof at a municipal actor
> disregarded a known or obvious consequence of his action." . . .  The
> "deliberate indifference" standard permits courts to separate omissions that
> amount to an intentional choice from those that are merely unintentionally
> negligent oversight[s].

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of</u>

<u>County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted))

(emphasis added).  "'Subjective recklessness,'" as used in the criminal law, is the

appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511

U.S. at 838-40).

Severin's written allegations and testimony meet neither of these two

requirements. The conditions described by plaintiff, while plainly not comfortable or

pleasant, do not rise to a level of seriousness constituting a constitutional violation.

Severin conceded in his testimony that the only physical injury or illness he has suffered

as a result of the allegedly unsanitary conditions or limited outdoors exercise are minor,

common respiratory complaints.  Thus, he alleges no serious harm or risk of serious harm

in the constitutional sense, and the court can perceive none under the circumstances

described in plaintiff's testimony and written submissions.

Short term sanitation problems, although admittedly unpleasant, do not amount

to constitutional violations.  <u>Whitnack v. Douglas County</u>, 16 F.3d 954, 958 (8th Cir.

1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).

Severin's allegations about mold, mildew and dirty conditions at the jail fail to establish constitutional violations.  See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary

13

water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional."). As the Fifth Circuit recently held in Brauner v. Coody, No. 12-314, 2015 WL 4393788, at *4-5 (M.D. La. July 17, 2015) (Africk, J.), no constitutional violation occurs when showers are cleaned with bleach, and the prisoner was provided a disinfectant spray bottle for his personal use. The court specifically noted that failure of prison officials to maintain germ-free showers is not cruel and unusual punishment.

In two other cases, the Fifth Circuit has held that extreme, virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment. In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in Davis, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" Davis, 157 F.3d at 1004, 1006. The appeals court quoted the

Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" Id. at 1006 (quoting Hutto v. Finney, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days.  Id. (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Severin do not rise to the level of a constitutional violation.  The conditions he experienced in OPP were neither virtually permanent nor an extreme deprivation of the type that might offend the Constitution, and he suffered no serious physical injuries or ailments as a result of any allegedly unsanitary conditions.

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants are responsible for constitutionally inadequate unsanitary conditions of confinement.  For all of the foregoing reasons, plaintiff's complaints in this case about unsanitary conditions of his confinement advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

III.   OUTDOORS RECREATION

Severin also alleges that he has not received sufficient outdoor exercise or recreation during his four-month imprisonment in OPP.  He complained that during his

four months of incarceration in the Tent 3 facility of OPP since his arrest, the only times he had been outdoors was to clean the tents.  He stated that he received no outside recreational opportunities, though he acknowledged that some inmates exercised indoors in the tents at night, while he chooses not to do so.

The Fifth Circuit "has held that deprivation of exercise may constitute an impairment of health, which is actionable under the Eighth Amendment, and that the absence of outdoor exercise opportunities may constitute an Eighth Amendment violation."  Hewitt v. Henderson, 271 F. App'x 426, 428 (5th Cir. 2008) (citations omitted) (emphasis added).  "While neither the Fifth Circuit nor the United States Supreme Court has ever specifically held that inmates enjoy an absolute right to out-of-cell exercise, the Fifth Circuit has repeatedly held that an extended deprivation of exercise opportunities might impinge upon an inmate's Eighth Amendment rights depending upon the particular facts of a given case."  Doolittle v. Holmes, No. 06-986-C, 2010 WL 22552, at *4 (M.D. La. Jan. 4, 2010) (citing Hewitt, 271 F. App'x at 428; Green v. Ferrell, 801 F.2d 765 (5th Cir. 1986); McGruder v. Phelps, 609 F.2d 1023 (5th Cir. 1979)) (emphasis in original).

However, it is clear that inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation."  Lewis v. Smith, 277 F.3d 1373, 2001 WL 1485821, at *1 (5th Cir. 2001) (citing Stewart v. Winter, 669 F.2d 328, 336 n.19 (5th Cir. 1982); Miller v. Carson, 563

16

F.2d 741, 751 n.12 (5th Cir. 1977)); accord Sampson v. Corrs. Corp., No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) (citing Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991); Lato v. Attorney Gen., 773 F. Supp. 973, 978 (W.D. Tex. 1991) (citing Beck v. Lynaugh, 842 F.2d 757, 762 (5th Cir. 1988)).  To succeed on a claim under Section 1983 for lack of exercise, a prisoner must establish "the existence of any health hazard under the specific circumstances involved."  Ruiz v. Estelle, 679 F.2d 1115, 1152 (5th Cir.), amended in part, vacated in part on other grounds, 688 F.2d 266 (5th Cir. 1982); accord Delaney v. DeTella, 256 F.3d 679, 684 (7th Cir. 2001); Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986).

As to his wholly conclusory allegation that the lack of outdoor exercise caused him to suffer various minor respiratory ailments, Severin's testimony and medical records do not support the conclusion that any of these conditions was serious or even related to lack of outdoor recreation.  Conditions of confinement may rise to the level of a constitutional violation only if they result in "a serious or significant . . . injury resulting from the challenged conditions."  Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir.), cert. denied, 114 S. Ct. 393 (1993) (emphasis added); accord White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993), cert. denied, 114 S. Ct. 931 (1994).

Any harm that Severin may have suffered by the minor maladies he describes in this case were not serious and did not rise to the level of a constitutional violation.  See, e.g., Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists with some

bleeding not serious); Griffin v. DeRobertis, 557 F. Supp. 302, 306 (N.D. Ill. 1983) (aches and sore throat not serious); cf. Barker v. Brantley County, 832 F. Supp. 346, 352 (S.D. Ga. 1993), aff'd, 19 F.3d 37 (11th Cir. 1994) (pneumonia is serious medical need). Certainly, plaintiff did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health). Severin's minor ailments do not rise to the level of health hazard resulting from lack of outdoor exercise necessary to state a constitutional violation.

IV.   MEDICAL CARE

Severin was a pretrial detainee at all relevant times about which he complains. He alleges that he received inadequate medical care for his "cold and flu-like symptoms" and minor respiratory ailments.

Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate

government interest.  Bell v. Wolfish,  441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in

Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas Cnty., 591

F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51,

53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th

Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a

claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he

demonstrates that there has been "deliberate indifference to serious medical needs" by

prison officials or other state actors.  Only deliberate indifference, "an unnecessary and

wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes

conduct proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 105-06; accord

Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d

at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows

that the inmates face a substantial risk of serious harm and [he] disregards that risk by

failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847

(1994).  The Farmer definition applies to Eighth Amendment medical claims.  Reeves,

27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has

violated the Eighth Amendment.  If the court finds that one of the components of the test

is not met, it need not address the other component.  Davis, 157 F.3d at 1005.  "First, the

deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or

omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009) (quoting Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that

amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770.  "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference."   Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue.  See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'").  Therefore, the "deliberate indifference" standard applies and Severin must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the conditions plaintiff described, consisting of "cold and flu-like symptoms" and minor respiratory ailments presented serious medical needs that posed a substantial risk of harm in his particular circumstances.  His testimony about fear of developing COPD was entirely speculative and lacked any support in his medical history or OPP medical records.  Thus, Severin did not suffer "a

22

life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth Cnty. v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); see also Fourte v. Faulkner Cnty., 746 F.3d 384, 389 (8th Cir. 2014) (high blood pressure readings alone do not indicate serious medical need); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health). Severin acknowledged in his testimony, and the medical records reflect, that he was regularly treated throughout his incarceration at OPP with medication for his complaints, including sinus medication, Zyrtec and cetirizine antihistamine.

Even assuming, however, though certainly without concluding that Severin's minor ailments presented a serious medical need for constitutional purposes, he has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated at the jail. Severin testified and his medical records confirm that he was seen by nurses and doctors at the jail and that medications were prescribed and provided for his minor respiratory complaints.

23

This record cannot support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense.  See, e.g., LaBorde v. Lowe, 471 F. App'x 390, 391 (5th Cir. 2012) (no deliberate indifference to serious medical needs when inmate "received extensive medical care and numerous prescription medications" for his high blood pressure and any other condition for which he requested treatment); Greer v. Tran, 124 F. App'x 261, 262 (5th Cir. 2005) (no deliberate indifference to serious medical needs when inmate was tested for diabetes mellitus, which was ruled out, although he ultimately died after falling into a diabetic ketoacidotic coma); Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d at 754) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and injuries healed on their own.); Harris v. Donaldson, 71 F.3d 876, 1995 WL 725438, at *2 (5th Cir. Nov. 3, 1995) (no deliberate indifference when prisoner received medical treatment for diabetes, including blood monitoring, medication and other attention, rendering his Section 1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for his chronic condition); Maldonado v. Keesee, 12 F.3d 1098, 1993 WL 543329, at *1 (5th Cir. Dec. 15, 1993) (no deliberate indifference when inmate admittedly was being treated by a doctor at the jail and receiving medication for high blood pressure).

24

Although Severin has alleged some delay in receiving medical care in that he did not receive the treatment he thought was necessary quickly enough, and he has expressed dissatisfaction with the overall speed, quality and initial effectiveness of treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such showing has been made on the current record.  In Severin's case, the decisions of the jail's health care providers regarding how to treat his minor maladies are classic examples of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298.  No such showing can be made in this case in light of the

continuing and successful medical attention Severin received during his incarceration in OPP.

Contentions like Severin's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."  Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also LaBorde, 471 F. App'x at 391 (plaintiff "received extensive medical care and numerous prescription medications; he has not shown any intentional delay or refusal to provide him with medical treatment for his high blood pressure or any other medical condition for which he requested treatment.  At most, he has established a disagreement with his treatment, unsuccessful treatment, or negligence, which does not amount to a constitutional violation."); Rowe v. Norris, 198 F. App'x 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Jenkins v. Lee, 84 F. App'x 469, 470 (5th Cir. 2004) (Plaintiff's summary judgment evidence and arguments "reflect nothing more than mere disagreement with the care rendered by [the prison doctor], or, at best, malpractice, which are insufficient to establish a constitutional violation," when the doctor prescribed one medication and

26

refused plaintiff's requests for a specific, alternate medication, after plaintiff complained of discomfort, lightheadedness, dizzy spells and nausea, and suffered a blackout due to high blood pressure.); <u>Mendoza</u>, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>Wesson</u>, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference); <u>Williams v. Browning</u>, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state a claim for deliberate indifference).

Under these circumstances, Severin cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs. For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.

V.    <u>ACCESS TO LEGAL MATERIALS</u>

Finally, Severin testified that he has been unable to obtain copies of paperwork needed for his court filings in this case, which sometimes causes him problems with meeting court deadlines. He admitted that legal assistance personnel at the jail respond

27

to his requests, but he complained that it takes too long and that various filings required by this court in the instant case had been delayed.

Prisoners have a First Amendment right of meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 828 (1977); Dickinson v. TX, Fort Bend County, 325 F. App'x 389, 390 (5th Cir. 2009); Sandoval v. Johns, 264 F.3d 1142, 2001 WL 822779, at *1 (5th Cir. 2001); McDonald v. Steward, 132 F.3d 225, 230 (5th Cir. 1998); Degrate v. Godwin, 84 F.3d 768, 768-69 (5th Cir. 1996). However, this constitutional right is not without limitations. "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." Vaccaro v. United States, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted) (emphasis added); accord Norton v. Dimazana, 122 F.3d 286, 290 (5th Cir. 1997); Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996). Significantly, a prisoner's First Amendment right in this regard is limited to the presentation of a non-frivolous claim or argument to the court. Lewis v. Casey, 518 U.S. 343, 352-53 (1996).

In addition, to state a claim that his constitutional right of access to the courts was violated, Severin must demonstrate that his position as a litigant was actually prejudiced. Id. at 356; Cochran v. Baldwin, 196 F. App'x 256, 257-58 (5th Cir. 2006); Smith v.

28

Polunsky, 233 F.3d 575, 2000 WL 1468717, at *1 (5th Cir. 2000); Eason, 73 F.3d at 1328.

Severin wholly fails to establish the essential elements of a First Amendment claim detailed above, either in his complaint or his testimony.  His testimony and his written submissions to this court in this case establish that he in fact had the ability to prepare and transmit legal documents to the courts.  In addition, no actual prejudice to his position as a litigant in this case has occurred.

It is clear that no actual legal prejudice to Severin's position as a litigant of the type required by Lewis was caused by any action or omission of the defendants. "[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains." Hart v. O'Brien, 127 F.3d 424, 446 (5th Cir. 1997), abrogated in part on other grounds as recognized in Spivey v. Robertson, 197 F.3d 772 (5th Cir. 1999); accord Brown v. Bryan County, 219 F.3d 450, 457 (5th Cir. 2000).  In Lewis, the Supreme Court made clear that an inmate must establish actual injury to state a claim for denial of his right of access to the courts.

Severin acknowledged in his testimony that, although various filings required by this court in the instant case had been delayed, the court permitted him additional time to make his submissions, which he ultimately succeeded in doing.  The record reflects that the only deadline missed in this court was as to a notice of deficiency issued by the Clerk of Court in the instant case.  Severin stated that he had experienced no problems

with any legal papers, other than in connection with the instant case in this court. Certainly, he has demonstrated his ability to make written submissions to this court in connection with this case. Severin has neither alleged nor shown any actual injury to his position as a litigant in this matter.

For all of the foregoing reasons, Severin's claims concerning the First Amendment are legally frivolous and fail to state a claim upon which relief can be granted under Section 1983. They must be dismissed.

## VI.   SHERIFF / MONELL

Severin makes no claim that Sheriff Gusman was personally involved in any of the alleged acts or omissions upon which his claims are based. "There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corr. Corp. of Am. Inc., 364 F. App'x 927, 929 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006). Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision. Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983). His proposed amended complaint similarly seeks to assert liability against "Captain Russell

Rhodes who is warden over the tents [and] has the ultimate responsibility" for the conditions in them.  Record Doc. No. 19 at p. 12.

To hold either of these defendants liable, plaintiff must establish either that they were "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [these defendants] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)).  In the instant action, plaintiff has failed to establish either that defendants were personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of defendants and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008).  Without alleging a particular custom, usage or policy for which defendants Sheriff Gusman or Captain Rhodes can be held constitutionally liable,

plaintiff fails to state a claim for relief under Section 1983.  Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.  No such unconstitutional custom, usage or policy has been alleged in this case.

"To hold a supervisory official liable for the acts of a subordinate, Severin must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."  Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998).  To state a failure to protect claim under § 1983, Severin must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).  For an official to act with deliberate indifference for purposes of either claim, he "'must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference.'"  Payne v. Pickett, 246 F. App'x 884, 889-90 (5th Cir. 2007) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

In this case, neither Severin's numerous written submissions nor his testimony make any of the allegations necessary to establish a Monell claim or any personal involvement of the Sheriff.  Accordingly, his allegations against the Sheriff fail to state a cognizable Section 1983 cause of action.

VII.   ORDER AND REASONS ON MOTION TO AMEND

Severin seeks to amend his complaint in this matter for the purpose of expanding upon his previously asserted claims.  The policy of the Federal Rules of Civil Procedure is liberal in favor of permitting amendment of pleadings, and Rule 15(a) evinces a bias in favor of granting leave to amend.  Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial. Stripling v. Jordan Prod. Co., 234 F.3d 863, 872 (5th Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994); Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co., 195 F.3d 765, 770 (5th Cir. 1999); Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597-98 (5th Cir. 1981)).  Thus, "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), but such leave "is by no means automatic."  Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993) (quotation omitted).  Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment."  Id.

Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted. . . .  [Thus,] to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)."  Stripling, 234 F.3d at 873 (quotations and citations omitted); accord Fenghui Fan v. Brewer, 377 F.

App'x 366, 367 (5th Cir. 2010).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' 'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"  In Re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)) (footnote omitted).

Severin's motion to amend is DENIED.  For all of the reasons discussed above, Severin cannot state a cognizable Section 1983 claim concerning any claim asserted in this case, and his amendment is futile.  The proposed amendment, including allegations of "neglect infliction of emotional distress," and the provision by OPP medical personnel of additional medication, including "albuterol sulfate inhalation aerosol" for his "cold/flu-like symptoms," further demonstrate that his individual complaints fail to rise to the level of violation of his constitutional rights.  Record Doc. No. 19 at pp. 5, 9-10.

Severin's proposed amended complaint refers to a consent decree issued as to OPP on an institutional basis in another section of this court.  The existence of that consent decree is of no moment insofar as the individual alleged constitutional violations asserted by Severin are concerned.  For all of the reasons set out above, none of the allegations Severin has made as to his particular circumstances rise to the level of violations of his individual constitutional rights sufficient to state a Section 1983 claim as to him personally.  Thus, his motion to amend is futile and must be denied on that ground.

34

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.   Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this __15th__ day of October, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.